IN THE COMMONWEALTH COURT OF PENNSYLVANIA

D.A. Nolt, Inc.,                          :
                Appellant    :
                               :
   v.                                    :  No.  556 C.D. 2020
                               :  Argued:  March 18, 2021
City of Lancaster                         :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE J. ANDREW CROMPTON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON                          FILED:  May 12, 2021


       D.A. Nolt, Inc. (Contractor) appeals from an order of the Court of Common Pleas of Lancaster County (Trial Court) that ruled in its favor in part on its claims against the City of Lancaster (City) for breach of a publicly bid contract. Contractor challenges the amount of damages, asserting the Trial Court erred in not awarding attorney fees, costs, or penalties available under Section 3935 of the Commonwealth Procurement Code (Code), 62 Pa. C.S. §3935, when the Trial Court found the City violated the Code.  Contractor argues the Trial Court abused its discretion and disregarded the evidence when it did not find that the City acted in bad faith by engaging another contractor for part of the project without public bidding.  Contractor also seeks prejudgment interest on the damages awarded for breach of contract.  Upon review, we reverse the Trial Court's order in part as to the denial of prejudgment interest on the damage award and remand for recalculation and revision of the judgment to include same; we affirm in all other respects.

## I. Background

This dispute centers on a publicly bid contract the City awarded to Contractor in August 2012 for green roof[1] installation and "related improvements" as a means of stormwater management (Contract). Reproduced Record (R.R.) at 11a. The scope of work entailed installing green roofs on existing roofs on up to 10 buildings and specifically included: "furnish[ing] all labor, superintendence, materials, necessary equipment, and other utilities and facilities for, perform[ing] all work necessary for or incidental to, and perform[ing] all other obligations imposed by this [Contract] for, the complete Work in connection with GREEN INFRASTRUCTURE PROGRAM 2012" (Project). R.R. at 18a. Contractor's bid was based on a unit price for 10 buildings, priced at $30.00 per square foot. This litigation involves the work performed on two buildings, the Chlorine Building, which was part of the City's water treatment facility, and the Stevens House, which was privately owned.

To assist in the Project, the City appointed an engineering firm to review the structural integrity of selected roofs to sustain the additional weight of green roofs, and a green roof design firm to serve as the City's agent. *See* Trial Ct., Slip Op., 12/16/19, Finding of Fact (F.F.) Nos. 5, 6. The Project was part of the Stormwater Management (SWM) Department, overseen by its director (Director). Consequently, there were multiple contacts for communication on the Project from 2012 to 2014, including City officials and private professionals at different times.

The Contract required Contractor to obtain all necessary permits and to perform work in accordance with applicable codes and laws. F.F. No. 8. The Contract also required inspections to ensure the work was compliant. F.F. No. 11.

---

[1] A green roof is comprised of organic materials, including soil and plantings, layered on a preexisting roof to aid stormwater management. *See* Trial Ct., Slip Op., 12/16/19, at 1 n.1.

The scope of the work changed during the Project, *see* F.F. No. 22, in part because existing roofs needed additional work as a prerequisite to green roof installation. Change orders[2] were signed on the City's behalf by the Mayor.

With regard to the Chlorine Building, Contractor's bid for installation was predicated on the roof being 2,500 square feet, at $30 per square foot, when the roof was 3,129 square feet. F.F. No. 16. Contractor advised the City of the discrepancy and that the work would be billed at the end of the Project based on the actual square footage. F.F. No. 17. Also, closer inspection of the Chlorine Building roof revealed that part of the roof (1,717 square feet) needed to be replaced to withstand installation, and the caps and stones around the roof were deteriorated. Roof replacement was within the scope of the Project, *see* F.F. Nos. 15, 21, whereas the cap/stone work was not. Contractor submitted an estimate in the form of a change order for the cap/stone work, to which the City did not respond. F.F. Nos. 19-20.

For both tasks (roof replacement and cap/stone repair), the City sought quotes from other contractors without competitive bidding and without Contractor's knowledge. Despite that replacing the roof membrane was within the Contract, F.F. No. 15, the City solicited quotes for partial roof replacement when it deemed Contractor's pricing "very high." F.F. No. 22. However, the City never issued a change order removing roof replacement from the Contract. F.F. No. 24. Instead, the City engaged a third party to perform that task. *See* R.R. at 108a. In October 2013, Contractor installed the green roof after the other contractor completed the replacement work. The City paid Contractor for the installation. *See* F.F. No. 25.

_____

[2] Pursuant to the Contract, a "change order" means "a written order to the Bidder signed by the City ordering a change in Documents and is within the general scope and purpose of the work as originally shown." Reproduced Record (R.R.) at 54a.

However, Contractor was not compensated for overhead or lost profits related to the roof replacement despite that it was within the scope of work.

With regard to the Stevens House, in February 2013, Contractor noted there were structural issues that could necessitate roof replacement, which was not covered by the Contract. Contractor presented an estimate for roof replacement of $283,000, which the City rejected. F.F. No. 28. The City then requested change orders regarding the root barrier material and priming the existing roof for installation. Contractor prepared these change orders, which were approved by the Mayor and the City's appointed engineer, for installing a root barrier in March 2013. F.F. No. 31. However, after delays based on the City's negotiations with the private owner, this part of the Project was not commenced until spring 2014. F.F. No. 34.

In 2014, Contractor requested a scan of the roof to ensure its integrity, which the City refused. Contractor sought a permit to commence work when requested to do so by the Code Officer, on May 6, 2014. F.F. No. 35. Contractor received the permit, which stated an inspection by the Code Officer was required prior to installation at the Stevens House. On May 12, 2014, the date the work was scheduled to begin at the Stevens House, the inspection was also to occur. However, the Code Officer called in sick the morning of the inspection; as a result, no inspection occurred. Nevertheless, Contractor performed work, relying on the signed change orders. Contractor also claimed the SWM Director agreed to pay for any work performed as scheduled in the event the roof was deemed unfit for completion per the Contract. The City did not pay for the work performed at the Stevens House, citing the lack of prior inspection. Subsequently, it was determined the roof at the Stevens House was incapable of sustaining a green roof. Because it was privately owned, it was the owner's decision not to move forward

4

with the green roof, and the work Contractor performed was removed and scrapped at no value. Ultimately, although Contractor billed the City $83,492.02 for this work, *see* F.F. No. 60, the City did not pay Contractor for its work at the Stevens House.

In September 2015, Contractor filed a complaint against the City for breach of the Contract, (Count I), unjust enrichment (Count II), *quantum meruit* (Count III), and noncompliance with the Code (Count IV). It sought damages in the amount of $257,851.39, comprised of its damages for nonpayment for work at the Stevens House, and for overhead and lost profits at the Chlorine Building for reducing its scope of work, plus attorney fees, costs, and penalties under the Code. *See* F.F. No. 63. Relevant here, Contractor pled that it "invoiced the City for the work it completed at the Project and for its overhead and profit on the portion of the Contract work improperly removed from its scope of work at the Chlorine Building in the total amount of $506,826.36," for which $103,796.97 remained due and owing. R.R. at 12a (Compl. ¶¶14-15). In its prayer for relief on its breach of contract claim, Contractor sought judgment in its favor for "$103,796.97, plus interest [and] costs of suit." R.R. at 13a. In addition, Contractor alleged "[it] is entitled to recover interest at the statutory rate . . ." *id*. ¶34, which "will continue to accrue monthly during the pendency of this action." R.R. at 14a.

The City counterclaimed for costs of investigating the roof condition of the Stevens House. It alleged improper and incomplete performance as to that work, arguing Contractor did not secure the proper permits/inspections and so did not perform its work in accordance with the law as set forth in the Contract.[3]

---

[3] The Trial Court determined that the damages the City sought in its counterclaim related to the potential litigation with this third party, not as a result of Contractor's unauthorized work.

5

The Trial Court conducted a two-day bench trial during which it heard testimony and accepted evidence. In addition to presenting testimony of several witnesses, both parties submitted documentation to support their respective claims, including emails of communications concerning the Project.

Based on the record, the Trial Court[4] ruled in Contractor's favor as to the Chlorine Building, concluding the City breached the Contract and violated the Code. However, it awarded a fraction of the damages Contractor claimed and did not award fees or penalties. *Id.* While the Trial Court ruled in Contractor's favor on the City's counterclaim, it determined that Contractor was not entitled to payment for its work at the Stevens House, finding that the work was not authorized. On December 16, 2019, the Trial Court issued an opinion containing extensive findings and legal conclusions in support of its order.

Using Contractor's estimate for the scope of work replacing the roof, bid at "$75,000, of which $23,362.58 constituted expected overhead and profit," F.F. No. 26, the Trial Court awarded damages to Contractor for $16,045.36 (Trial Ct. Op. at 20), for the City's breach as to the Chlorine Building. *See also* R.R. at 218a. The Trial Court reduced the amount based on the actual square footage of roof replaced (1,717), which was less than the square footage in the bid.

The Trial Court agreed that the City violated the Code in that the roof replacement of the Chlorine Building was within the initial scope of work, and so should have been bid, and the work removed from the Contract through a change order. Conclusion of Law (C.L.) Nos. 10-11. However, the City did not issue such a change order. F.F. No. 24, R.R. at 219a. By engaging another contractor to replace part of the roof without bidding, the City violated the Code. C.L. No. 11.

---

[4] The matter was assigned to President Judge Ashworth, as the initial trial judge recused.

6

Notwithstanding that it found a violation of the Code, the Trial Court declined to find bad faith. Rather, it reasoned the City made an error in construing the process, and not recognizing that once the roof replacement was part of the Contract, it was subject to public bid on equal terms with Contractor. *See* Trial Ct. Op. at 19. Deeming this a mistake, the Trial Court concluded the City's improper removal of work from the Contract without giving Contractor an opportunity to match the quotes, "was not arbitrary." *Id.* at 22. It also reasoned the City did not act vexatiously because any delays in soliciting estimates and roof replacement from another contractor were immaterial when Contractor did not later perform that work. *Id.* As a result, it denied Contractor's claims for attorney fees, costs and penalties.

As to the Stevens House, the Trial Court determined Contractor was not authorized to perform the work for which it sought payment. *See* F.F. No. 44. It also noted there was no evidence in the record to support Contractor's assertion that the SWM Director bound the City to paying Contractor for work performed.

Contractor filed post-trial motions, which the Trial Court denied. *See* R.R. at 397a. Contractor appealed the Trial Court's order to the Superior Court.[5] Contractor filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), challenging the Trial Court's neglect to award prejudgment interest, and asserting attorney fees, costs, and penalties should have been awarded under the Code for the City's bad faith. Per Rule 1925(a), the Trial Court advised it was relying on its previously issued decision that contained its findings and conclusions. Following entry of the judgment for the damages awarded, the appeal was transferred to this Court. After briefing and argument, the matter is ready for disposition.

---

[5] The City did not file a cross-appeal of the Trial Court's denial of its counterclaim.

## II. Issues

Contractor ascribed multiple errors to the Trial Court involving its disposition of the contract claims as to work that was contracted for on the Chlorine Building, and as to work performed, but unpaid, on the Stevens House. Specifically, Contractor presents seven issues for review, which we group as related to the damages calculated and awarded for work within the Contract for the Chlorine Building, and failure to award damages for work done at the Stevens House.[6]

Regarding the Chlorine Building, Contractor argues the Trial Court erred in not awarding damages for the contracted amount, including lost profits and overhead for roof replacement. Contractor also assigns error in that the Trial Court did not include prejudgment interest in the award. Additionally, Contractor asserts the Trial Court erred in declining to award attorney fees, costs and penalties under Subchapter D of the Code, known as the Prompt Pay Act, 62 Pa. C.S. §§3931-3939, when the Trial Court found the City violated the Code by engaging a third party to partially replace the roof without public bidding. Essentially, Contractor maintains

---

[6] Contractor presented seven issues, paraphrased as follows:

1) The Trial Court abused its discretion in not including attorney fees, costs and penalties in the damage award because the City engaged in bad faith in taking roof replacement at the Chlorine Building from Contractor and awarding it to another contractor without public bidding;

2) The Trial Court ignored evidence that Contractor performed some work at Chlorine Building when it denied claims for attorney fees/costs and penalties under the Code;

3) Prejudgment interest should have been awarded on damages as to Chlorine Building;

4) The Trial Court disregarded evidence that City agreed Contractor would be paid for work performed at Stevens House, despite noncompletion;

5) The Trial Court disregarded evidence in finding Contractor in breach when the City directed it to begin work at Stevens House and was aware work was scheduled;

6) The Trial Court disregarded evidence in finding a breach by Contractor when it began work on the Stevens House; and

7) The Trial Court erred in deeming Contractor's workmanship at the Stevens House defective.

*See* Contractor's Br. at 7-9.

that the Trial Court abused its discretion in not deeming the City to have acted in bad faith when it found the City violated the Code in contracting for roof work without competitive bidding.[7]

Regarding the Stevens House, Contractor contends that it was entitled to recover payment from the City for work performed, despite its removal, because the SWM Director agreed that any work completed would be compensated in the event the roof was deemed unsound for complete green roof installation. Contractor maintains the City was bound by the SWM Director's agreement.

## III. Discussion

## A. Procurement Code

The Prompt Pay Act governs the construction contract between the City and Contractor. *See E. Coast Paving & Sealcoating, Inc. v. N. Allegheny Sch. Dist.*, 111 A.3d 220, 232 (Pa. Cmwlth. 2015). Relevant here, the Prompt Pay Act requires payment for work done, 62 Pa. C.S. §3931, and sets a schedule for payment even where the contract does not so provide. 62 Pa. C.S. §3932(b). In addition, the statute allows payment to be withheld when certain notice criteria are satisfied. 62 Pa. C.S. §3934(b). It also allows recovery of attorney fees, costs, and penalties when payment is withheld in bad faith. 62 Pa. C.S. §3935.

## B. Contract Claims

## 1. Stevens House

First, we consider whether the Trial Court erred in denying Contractor's claim for payment of work performed on the Stevens House. There is

---

[7] As the Trial Court concluded, once the City availed itself of public bidding for the Project (*i.e.*, green roof installation), the partial roof replacement on the Chlorine Building became subject to the same process such that the City violated the Code in not bidding the roof replacement. *See Am. Totalisator Co., Inc. v. Seligman*, 414 A.2d 1037, 1040 (Pa. 1980).

no dispute that work was performed in installing a root barrier and green roof, both of which were scrapped because the roof was not structurally sound.

The dispute focuses on whether Contractor should be able to recover for work performed when it knowingly went ahead with the work without an inspection of the roof by the Code Officer. Contractor asserted that the SWM Director advised that the City would pay for any work already performed if a roof scan showed that the roof could not support green roof installation. However, the Trial Court found that Contractor proceeded at its own risk when it installed material on a roof without the Code Officer's inspection of the existing roof. F.F. No. 39.

Because Contractor knowingly proceeded with installation, without the prerequisite inspection, when the permit required inspection prior to covering the existing roof, this Court agrees that the work performed at Stevens House was not authorized by the Contract. Roof substrate inspection was a precondition to green roof installation, and the Trial Court found that Contractor should have known before installing the root barrier and green roof that the Stevens House roof needed replacing because Contractor asked about testing its soundness. As such, the Trial Court did not err in determining that Contractor "took upon itself the attendant risks" when it proceeded with the install. Trial Ct. Op. at 15.

Further, it was Contractor's responsibility under the Contract to secure all permits and to comply with local codes in the installation. *See* R.R. at 32a. When Contractor obtained the permit, it advised a roof substrate inspection by the Code Officer was necessary prior to installation. Of import, there is no dispute that Contractor did not receive the inspection prior to installing the root barrier and green roof overlay. Therefore, we discern no error by the Trial Court in denying Contractor's claim for payment for its work at the Stevens House.

10

Contractor's argument that the SWM Director had apparent authority to bind the City to make payment on these new terms, despite Contractor's noncompliance with prerequisites for installation, is equally unavailing. The Trial Court did not find that the City advised Contractor that the SWM Director had the authority to authorize payment on terms other than the Contract on the City's behalf. Because the Contract was clear about the prerequisites for the installation work, we agree with the Trial Court that Contractor proceeded with work at its peril.

## 2. Chlorine Building

To recap, Contractor challenges the amount of the award for the City's breach of the Contract as to the Chlorine Building because it did not include prejudgment interest. Contractor also argues that because the Trial Court found a violation of the Code, it abused its discretion and disregarded the evidence in denying its claims for attorney fees, costs, and penalties.

The Trial Court awarded $16,045.36 in damages to compensate Contractor for its lost profits and overhead on work contemplated by the Contract, *i.e.*, roof replacement, but performed by a third party. The Trial Court determined the City breached the Contract when it reduced the scope of work under the Contract, and the damage award was designed to compensate Contractor for the roof replacement work not performed, on which it sought anticipated profits and overhead. Though Contractor billed the City in October 2013 for its lost profits and overhead on the roof membrane (existing roof), the City did not pay that bill. The City paid only for the green roof installation work, which is not at issue.

Contractor seeks prejudgment interest on the damages award, disputes the amount of the award, and assigns error in that the Trial Court did not award attorney fees and costs or penalties for clear violations of the Prompt Pay Act.

11

## (a) Prejudgment Interest

An appellate court's "review of an award of pre[]judgment interest is for abuse of discretion." *Kaiser v. Old Republic Ins. Co.*, 741 A.2d 748, 755 (Pa. Super. 1999) (citation omitted). "A court has discretion to award or not award prejudgment interest on some claims, but must or must not award prejudgment interest on others." *Cresci Constr. Servs., Inc. v. Martin*, 64 A.3d 254, 258-59 (Pa. Super. 2013) (citations omitted).

As our Supreme Court explained, prejudgment "[i]nterest has been defined 'to be a compensation allowed to the creditor for delay of payment by the debtor,' and is said to be impliedly due 'whenever a liquidated sum of money is unjustly withheld.'" *TruServ Corp. v. Morgan's Tool & Supply Co., Inc.*, 39 A.3d 253, 264 (Pa. 2012) (citation omitted). Longstanding Pennsylvania law adopts the Restatement (Second) of Contracts with regard to awarding prejudgment interest. *See Penneys v. Pa. R.R. Co.*, 183 A.2d 544 (Pa. 1962). The applicable section of the Restatement provides:

> (1) If the breach consists of a failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled.
>
> (2) In any other case, such interest may be allowed as justice requires on the amount that would have been just compensation had it been paid when performance was due.

Restatement (Second) of Contracts §354(1)-(2) (Am. Law Inst. 1981). Consequently, "a party is not chargeable with interest on a sum unless its amount could [be] determined . . . with reasonable certainty so that he could have made a proper tender." *Id.* cmt. c. Thus, before awarding prejudgment interest, the court must identify whether the damages were ascertainable based on the nature of the breach. *See id.*

12

An award of prejudgment interest is mandatory when the amount is mathematically calculable or ascertainable from the contract. *TruServ Corp.*, 39 A.3d at 264; *see A. Scott Enters., Inc. v. City of Allentown*, 102 A.3d 1060, 1072-73 (Pa. Cmwlth. 2014), *rev'd on other grounds*, 142 A.3d 779 (Pa. 2016). The recovery of prejudgment interest under this standard is a matter of law, not of discretion. *TruServ Corp.*; *see also Cresci Constr. Servs.*, 64 A.3d at 258-59. Such interest is due even when a party contested the claims in good faith. *See Ely v. Susquehanna Aquacultures, Inc.*, 130 A.3d 6, 16 (Pa. Super. 2015).

Additionally, a reduction in the amount of damages does not render the amount non-discernible such that it does not qualify for prejudgment interest. *See id.*; *Widmer Eng'g, Inc. v. Dufalla*, 837 A.2d 459 (Pa. Super. 2003). Indeed, "simply because a [factfinder] returns a verdict in an amount less than that prayed for does not convert an otherwise liquidated amount into an unliquidated amount upon which interest does not accrue." *Ely*, 130 A.3d at 16.

When damages are mathematically calculable, prejudgment interest is due at the statutory rate of six per cent per year. *See* Section 202 of the Act of January 30, 1974, P.L. 13, 41 P.S. §202. Prejudgment interest is due from the time payment was due or claimed until the entry of judgment. *See, e.g.*, *Commonwealth State Pub. Sch. Bldg. Auth. v. Noble C. Quandel Co.*, 585 A.2d 1136 (Pa. Cmwlth. 1991) (explaining timing for prejudgment interest award as based on when payment was due; remanding for recalculation of prejudgment interest on part of claim).

Upon careful review of this case and the Trial Court's findings, the damage award for lost profits and overhead was reasonably ascertainable such that prejudgment interest should have been awarded. Contractor consistently claimed a specific amount ($23,362.58) for overhead and lost profits related to the

13

replacement of the roof membrane of the Chlorine Building. The figure was derived from its bid documents that were incorporated in the Contract. However, the Trial Court reduced the amount claimed to account for the difference in square footage between the anticipated roof membrane replacement in the bid and the partial roof replacement. Using Contractor's bid, which was based on 2,500 square feet, the Trial Court reduced the amount of damages claimed for lost profits and overhead related to roof replacement to reflect the square footage actually replaced, 1,717 (F.F. No. 18), to derive its award of $16,045.36. All of these figures were available and ascertainable at the time Contractor submitted an invoice to the City for payment of lost profits and overhead related to the Chlorine Building on October 23, 2014. *See* R.R. at 267a (Notes of Testimony, 2/4/19, at 135, explaining amounts were due and owing since 2014). Accordingly, prejudgment interest is calculable from the date of the invoice that presented the claim for lost profits and overhead, which was reduced from $23,362.58 to $16,045.36. *See Noble C. Quandel Co.*

Notably, the Trial Court's decision denying prejudgment interest is inconsistent with its methodology of determining the award based on the evidence Contractor submitted as to its overhead and lost profits. F.F. No. 26; C.L. No. 12. The Trial Court calculated damages related to the City's reduction of work under the Contract using a mathematical formula derived from the per unit/square foot price contained in the Contract documents and the actual square footage replaced.

Since the amount was ascertainable from the Contract, F.F. Nos. 15-18, the Trial Court erred in denying prejudgment interest. Accordingly, that part of the Trial Court's order dated December 16, 2019, is reversed, and the matter is remanded for the Trial Court to recalculate the judgment to include prejudgment interest at the statutory rate of 6% from the date when payment was due upon

14

Contractor's claim for overhead and lost profits on the replacement aspect of the Chlorine Building until the judgment.

### (b) Attorney Fees, Costs, & Penalties (Bad Faith)

Lastly, we address Contractor's contention that it is entitled to attorney fees, costs, and penalties based on the City's bad faith in negotiating for and securing another contractor to replace part of the roof on the Chlorine Building, without utilizing the public contract process. Contractor's claims are based on the Trial Court's determination that the City violated the Code. Contractor maintains that because the Trial Court found the City committed a violation of the Code, it was a clear abuse of discretion for the Trial Court to not also find bad faith.

The Prompt Pay Act, relating to attorney fees/litigation costs and penalties, states as follows:

> (a) **Penalty**. -- If arbitration or a claim with the Board of Claims or a court of competent jurisdiction is commenced to recover payment due under this subchapter and it is determined that <u>the government agency</u>, contractor or subcontractor <u>has failed to comply with the payment terms of this subchapter</u>, the arbitrator, the Board of Claims or <u>the court **may** award</u>, in addition to all other damages due, a <u>penalty equal to 1% per month of the amount that was withheld in bad faith</u>. An amount shall be deemed to have been withheld in bad faith to the extent that the withholding was arbitrary or vexatious. An amount shall not be deemed to have been withheld in bad faith to the extent it was withheld pursuant to section 3934 (relating to withholding of payment for good faith claims).
>
> (b) **Attorney fees**. -- Notwithstanding any agreement to the contrary, <u>the prevailing party</u> in any proceeding to recover any payment under this subchapter <u>may be awarded</u> a reasonable attorney fee in an amount to be determined by the Board of Claims, court or arbitrator, together with expenses, **if** <u>it is determined that the government agency</u>, contractor or subcontractor acted in bad faith. <u>An amount shall be deemed to have been withheld in bad faith to the extent that the withholding was arbitrary or vexatious.</u>

15

62 Pa. C.S. §3935 (emphasis added). The statutory language uses the permissive form of may, leaving the determination of whether to award penalties or attorney fees and costs as a matter of discretion.

Also by its terms, under the Prompt Pay Act, actions are in "bad faith" when they are arbitrary or vexatious. *Cummins v. Atlas R.R. Constr. Co.*, 814 A.2d 742, 747 (Pa. Super. 2002). Although the statute does not define the terms "arbitrary" and "vexatious," decisions construing these terms in the procurement context instruct that we define the terms based on their "popular and plain everyday sense, and popular meanings of such words must prevail." *Id.* (citation omitted). *See also* 1 Pa. C.S. §1903(a) ("Words and phrases shall be construed according to . . . their common and approved usage . . . ."). Webster's Dictionary defines "arbitrary" as "determined by impulse or whim" and "vexatious" as "causing or creating vexation" which is then defined as "a source of annoyance or irritation." *Id.* (citing Webster's II New Collegiate Dictionary 57, 1229 (2001)).

Our Supreme Court clarified in its opinion reversing our decision in *A. Scott Enterprises v. City of Allentown*, 142 A.3d 779 (Pa. 2016), that the imposition of penalties and attorney fees is not mandatory under the Prompt Pay Act, even where there *is* a finding that a government agency has "acted in bad faith." *A. Scott Enters.*, 142 A.3d at 783 (reversing this Court's holding that "Section 3935 of the Procurement Code requires the imposition of attorne[y] fees and the statutory penalty upon a [factfinder's] finding of bad faith").

In an unreported decision also involving a bad faith claim under the Prompt Payment Act, this Court recognized that a difficulty in agreeing on change orders or how to address problems as they arise over the course of a project, while laden with misunderstanding, does not implicate bad faith. *See Trinity*

16

*Contracting, Inc. v. Mun. Sewage Auth.* (Pa. Cmwlth., Nos. 523 & 524 C.D. 2015, filed Dec. 15, 2015), 2015 WL 8776568 (unreported).[8]  Moreover, this Court may not reject a factfinder's bad faith determination absent a clear abuse of discretion. *James Corp. v. N. Allegheny Sch. Dist.*, 938 A.2d 474, 489 (Pa. Cmwlth. 2007).

Critically, the necessary predicate finding of bad faith is absent from the Trial Court's extensive and thorough findings.  *See generally* Trial Ct. Op., F.F. Nos. 1-64.  Here, the Trial Court did not deem the City's actions in asking Contractor to prepare change orders for work it was simultaneously engaging another contractor to perform as vexatious or arbitrary.  To the contrary, the Trial Court characterized the City's actions as erroneous and mistaken, not bad faith. *See* Trial Ct. Op. at 21 ("mere failure to adhere to the required contracting process, however, does not appear to constitute bad faith").  The Trial Court found that the City's violation of the Code in not bidding the roof replacement for the Chlorine Building was not intentional; rather, it was an "incorrect interpretation of the law and the facts of this case" when the City did not recognize that the partial roof replacement, which was within the scope of work for the Project, F.F. No. 15, had to be publicly bid.  *Id.*

This Project was fraught with confusion in that it seems more than one officer or engineer was utilized in the Project, and there was some question as to who had the ultimate authority to permit the continuation of the Project, set terms, and make other decisions on the City's behalf.  Nonetheless, applying an abuse of

---

[8] We cite this unreported decision for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

discretion standard,[9] *A. Scott Enters.*, 142 A.3d at 790, this Court discerns sufficient grounds to uphold the Trial Court's conclusion that the City's conduct did not amount to bad faith under the Prompt Pay Act.

Additionally, we recognize that whether to award attorney fees and costs is a matter entirely within a trial court's discretion. *Cummins.* Further, "[t]he trial court has great latitude and discretion with respect to the amount of an attorney fee award under the Prompt Pay Act." *Klipper Constr. Assocs., Inc. v. Warwick Twp. Water & Sewer Auth.* (Pa. Cmwlth., Nos. 471 & 792 C.D. 2014, filed Dec. 16, 2014), slip op. at 27, 2014 WL 10316918, at *12 (unreported). We discern no abuse of discretion that warrants a remand for inclusion of attorney fees and costs here.

## IV. Conclusion

For the foregoing reasons, we reverse the Trial Court's order containing the damage award in Contractor's favor to the extent it excluded prejudgment interest. We remand the matter to the Trial Court, as to the damages calculation only, to recalculate the award to include prejudgment interest from the date payment was due on the invoice corresponding to overhead and lost profits for the replacement of the roof membrane on the Chlorine Building until the entry of judgment. We affirm the Trial Court's order in all other respects.

_____
J. ANDREW CROMPTON, Judge

---

[9] "Abuse of discretion is shown where the trial court misapplies the law or its decision is manifestly unreasonable, arbitrary or capricious, or was motivated by partiality." *James Corp. v. N. Allegheny Sch. Dist.*, 938 A.2d 474, 483 n.7 (Pa. Cmwlth. 2007).

18

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

D.A. Nolt, Inc.,                    :
              Appellant    :
                                   :
        v.                           :   No.  556 C.D. 2020
                                   :
City of Lancaster               :

## O R D E R

**AND NOW**, this 12th day of May 2021, the order of the Court of Common Pleas of Lancaster County that denied D.A. Nolt, Inc.'s post-trial motions, which challenged the calculation of damages underlying the verdict in its favor, and awarded damages in part on Contractor's breach of contract claim is REVERSED IN PART, as to the denial of prejudgment interest on the damages awarded for work performed on the Chlorine Building, and is AFFIRMED IN PART in all other respects.

IT IS FURTHER ORDERED that the matter is REMANDED to the Trial Court to recalculate the damage award to include prejudgment interest at the statutory rate of 6% and to modify the order and related judgment to include the recalculated total amount.

Jurisdiction relinquished.

_____
J. ANDREW CROMPTON, Judge