## Taber *v.* Porter-Gildersleeve Co., Inc., Appellant.

*Contract—Failure of performance—Completion of work—Damages—Measure.*

1. Where a contractor fails in his contract to fill land, it is the owner's duty to mitigate the damages by such reasonable acts as will avoid damages to all parties.

2. If the owner procures another to complete the fill, and this is done by the second contractor in connection with other land at an average cost, which is less than the cost of filling the owner's land by itself, the measure of damages is the difference between the contract price, and the actual price paid by the owner for the completion of the fill.

3. In such case the contractor cannot assert that the measure of damages is the difference between the value of the land filled and unfilled.

Argued March 23, 1921. Appeal, No. 298, Jan. T., 1921, by defendant, from judgment of C. P. No. 3, Phila. Co., June T., 1919, No. 306, on verdict for plaintiff, in case of George H. Taber v. Porter-Gildersleeve Co., Inc. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit for breach of contract. Before MC-MICHAEL, P. J.

The opinion of the Supreme Court states the case.

At the trial it appeared the contract was dated November 30, 1915, and was to be completed by May 30, 1918. Defendant failed to perform the contract, and the work was completed by the American Dredging Co.

A. N. Harris and H. A. McCleman, witnesses for plaintiff, were permitted to testify, under objection and exception, that the work was done in an economical way, and Harris testified that it would have cost more to fill the Taber property alone, than it actually did cost to fill it in connection with other property.

Verdict and judgment for plaintiff for $7,574.98.   Defendant appealed.

*Errors assigned,* among others, were (1-3) rulings on evidence, quoting the bills of exceptions and evidence and (9) portion of charge referred to in the opinion of the Supreme Court, quoting it.

*George P. Orr,* of *Conard, Middleton & Orr,* for appellant.—The court erred in allowing the jury to guess at plaintiff's damage when there was no evidence that the completion of the fill had cost anything.

Since plaintiff actually had the work done, the "reasonable" cost is irrelevant unless, and until, we know the "actual" cost: Theiss v. Weiss, 166 Pa. 9; Morris v. Supplee, 208 Pa. 253.

*Ralph B. Evans,* for appellee.—There is no case in Pennsylvania, nor, so far as an exhaustive search has disclosed, in any other jurisdiction, in which it has been held that the defaulting party to a contract was entitled to the benefit of a bargain made by the innocent party after the date of breach, even though the result of such bargain may be to minimize plaintiff's loss or even to compensate him entirely.

OPINION BY MR. JUSTICE KEPHART, July 1, 1921:

Defendant contracted to fill plaintiff's lot of ground in Philadelphia, but failed to do so.   The land was filled by another, and plaintiff recovered the difference between cost and contract price.   The real issue in the court below was the existence of a contemporaneous oral

agreement to take care of the waterways on the ground in connection with the filling. Appellant's main complaint is now based on the supposed lack of evidence to show plaintiff had paid anything to complete the contract breached by defendant, and that the actual cost of completing was not proven. The only dispute as to damages was the proper measure; the difference between contract price and actual cost of making the fill being plaintiff's theory, while defendant's was the difference in the value of the ground filled and unfilled.

Viewing the case as now presented, however, the evidence was sufficient to show payment and cost. Defendant objected when Harris, superintendent of the dredging company that did the work, was asked "What was the actual cost of making that fill as you made it?" and further objected to a detailed statement showing how the work was done. The best that could be offered, where the land was filled in connection with other land, was to show the average price and that it was a reasonable price. But there is sufficient from the testimony to infer the average price (18 cents per yard) was the price paid by plaintiff. It was plaintiff's duty, when defendant failed in its contract, to mitigate the damages by such reasonable acts as would avoid financial loss to all parties. This land, along with other land, was filled by the American Dredging Company. Had it been the only land filled, it would have cost much more. The average cost was, then, less than the reasonable cost. Appellant surely cannot complain if the result of this combination was to reduce the cost of filling the lot. While defendant insisted on knowing the actual cost, it objected when the witness wanted to tell the "whole story." If the actual price was less than the average price, of course defendant should have the benefit of this reduction, but as plaintiff submitted the average price as the cost price charged by the dredging company, defendant, by one question, could have clarified the matter to the satisfaction of counsel who now take this appeal. While there is evi-

dence to sustain the verdict, there is not a single assignment raising the question now urged. It was evident to counsel who tried the case, as it is to us, that cost and payment were adequately proven. The ninth assignment states the position of the trial court in relation to this matter when the jury were instructed the "measure of damages is the difference between the contract price and what it cost plaintiff to fill his land." And further "we have evidence here, not contradicted, that he [plaintiff] did do that [fill the land] in the most economical way possible." Defendant objected to the measure of damages as not being proper, and, on this ground alone, asked an exception to this portion of the charge. It asserted the measure of damages was the difference between the value of the land filled and unfilled. On this phase of the case, it is the only objection we can consider, and defendant does not press it. However, the measure adopted by the court was correct: Snyder v. Bassler Limestone Co., 66 Pa. Superior Ct. 5, 9.

The evidence of Harris was clearly admissible, as was that of McCleman; Gildersleeve's evidence was properly excluded. As a general rule, damages are to be ascertained at the time of the breach. As the lot was not filled at that time, Gildersleeve was asked, "What would have been a fair price for filling the lot to the established city grade about the end of May or the first of June, 1918?" That was objected to by defendant. The next question asked, "What was the actual cost of making that fill as you made it?" and this also was objected to.

We do not touch upon several very interesting propositions of law presented. Plaintiff claims that, admitting but not conceding he gave the ground merely as wasting ground, without charge, and the lot was filled after defendant breached his contract without cost, the latter is not entitled to the fruits of this arrangement, but should be held to pay what it would reasonably cost to fill the land at the time of the breach, less contract price; it is just as earnestly urged by appellant it is

plaintiff's duty to mitigate damages as far as possible, and it is not the policy of the law to permit a contractor, who has failed to make good, to be unduly penalized. So, when plaintiff secures the work to be done at a cost less than appellant agreed to, or for no cost at all, defendant is entitled to the benefit. As there is enough evidence to sustain the verdict, it is unnecessary to discuss these questions.

The judgment of the court below is affirmed.