Herod, Appellant, v. Luxner.

Argued October 1, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Hugh G. Montgomery,* with him *Thompson & Baily, W. Robert Thompson, J. B. F. Rinehart* and *Montgomery & Montgomery,* for appellants.

*John I. Hook, Jr.,* with him *Scott & Hook,* for appellee.

OPINION BY MR. JUSTICE JONES, January 4, 1954:

This appeal is from an order awarding a new trial in an action of assumpsit. The plaintiffs, as the lessors in a written lease for the strip-mining of a certain vein of coal underlying two tracts of land in Greene County, sued to recover royalties allegedly owing by the lessee under the terms of the lease.

The question of law which the appellants raise depends for its answer on the construction to be placed upon the lease with particular reference to a monthly minimum tonnage clause whereby the lessee obligated himself "to mine and pay for a minimum tonnage of five thousand tons in each calendar month for first cut [i.e., a stripping swath along a dimension of the operation], three thousand tons for the second cut [adjacent to the first cut], and all remaining cuts [t]hereafter, payable monthly, . . . any coal mined in any month, in excess of said amount" to be credited in favor of the lessee on the next succeeding month or months. The lessee agreed to pay to the lessors as royalty 25¢ for each net ton of 2000 pounds of marketable coal mined and removed from the leased premises during the term of the lease which ran for a fixed period of eighteen months. In connection with the royalty so fixed, the lease further provided that,

in the event the current market price of coal of the kind and quality mined from the premises should exceed three dollars per ton, the lessors should receive, in addition to the 25¢ per ton royalty, an additional royalty equivalent to ten per cent of the excess price over three dollars a ton at which the coal was marketed.

Upon the execution and delivery of the lease, the lessee at once entered upon the tract which the lease required him to strip-mine first, but, after four months operation, he abandoned the project and removed his equipment, claiming that it was impractical to strip-mine the coal on account of the rock formation, which condition, if present, exonerated him, according to the lease, from his obligation to mine the coal. Shortly thereafter the plaintiffs instituted the action here involved and claimed, as royalties owing by the lessee, the sum of $11,935.49, with interest, upon the allegation that the defendant was obligated to mine a minimum of 58,000 tons of coal during the term of the lease.

A few months later, but still within the term of the lease, the plaintiffs, in order to mitigate the damages (see *Taber v. Porter-Gildersleeve Co., Inc.*, 271 Pa. 245, 247, 114 A. 773; and *Auer v. Penn*, 99 Pa. 370, 375-376), orally re-let to another strip-mining operator at a royalty of 27½¢ per ton the tract which the defendant was not to strip-mine until the designated first tract had been stripped. When the successor operator had finished stripping the "second" tract, he orally agreed with the plaintiffs to strip-mine the balance of the "first" tract, upon which the defendant had worked, for a royalty of 15¢ a ton although like coal was then marketing at $4.45 per ton. The apparent reason for this very low royalty was because of the difficulty and added heavy expense of

strip-mining that particular tract due to the rock formation of its overburden.

When the stripping of both tracts had been completed, the plaintiffs amended their complaint and claimed damages in the sum of $13,131.13, with interest as before, upon the allegation that there were 72,000 tons of coal in the two tracts which the defendant could have mined, and was obligated so to do, in addition to the 10,258 tons which he had actually mined and for which he had paid the plaintiffs the royalties due. To both the original and amended complaints, the defendant answered, denying any liability to the plaintiffs because of the release afforded by the lease in the event the existing rock formation rendered impracticable the stripping of the coal.

Upon trial, the jury returned a verdict in favor of the plaintiffs for $7,000, which amount bore no rational relation to the evidentiary figures in the case. The verdict did determine, however, that, as a matter of fact, it was not impracticable for the defendant to have strip-mined the leased coal. His abandonment of the operation, therefore, constituted a breach of the lease which rendered him liable to the extent of his obligations under the contract.

In passing upon the motion for a new trial, the learned judge of the court below correctly construed the lease by holding that the defendant's liability was *to pay royalties* at the relevant rate on the monthly minimum tonnage requirement of the lease for the duration of the term if the coal which he mined did not exceed the minimum. Inasmuch as the defendant had mined but 10,258 tons in all, he was liable to the plaintiffs for royalties at the specified rate (augmented proportionately for any increase in the market price of like coal) on the 60,000-ton minimum for the term of the lease. This total minimum tonnage liability is

arrived at as follows. The plaintiffs proved and the defendant admitted that the lessee had completed "the first cut" at the end of the first three months of the term. For that (first cut) period, he was liable for royalties on a minimum tonnage of three times 5,000 tons or 15,000 tons. There then remained fifteen months of the term for which the lessee's obligation was to pay royalties on a minimum of 3,000 tons per month, making 45,000 tons for the fifteen-month period, or a total of 60,000 tons for the term of the lease. Such was the nature and extent of the lessee's minimum liability whether he actually mined less than that amount or even mined no coal at all. In either of such events, he was bound to pay on the basis of royalties on the prescribed monthly minimum tonnage.

At the specified rate of royalty as proved by the plaintiffs (with due allowance for automatic increases therein), the defendant's total liability for royalties on the 60,000-ton minimum for the term was $17,715. The plaintiffs' proofs also established the amount of coal mined by the defendant as well as the amount mined by the successor operator up to the total aggregate of 60,000 tons for both; and they further proved the amounts paid them by the defendant and by the successor operator as royalties on the aggregate 60,000 tonnage. From the foregoing proven facts, which the defendant did not dispute, the learned court below worked out with mathematical accuracy that the defendant's undischarged liability to the plaintiffs as of the termination of the lease on June 15, 1948, was $1,471.44.

Accordingly, the court entered an order awarding the defendant a new trial unless the plaintiffs within ten days filed a remittitur in writing of so much of the verdict as exceeded $1,868.72, being the sum of $1,471.44 with interest thereon from June 15, 1948,

to the date of the order. A remittitur not having been filed within the time prescribed, the order granting a new trial was duly entered of record and the plaintiffs brought this appeal.

We have no alternative but to affirm. The appeal involves no more than a question as to the lower court's exercise of its discretion which was certainly not abused. It is perfectly obvious from the admitted and indisputable facts, as hereinabove detailed, that the plaintiffs were not entitled to a verdict in a sum greater than $1,471.44 with interest from June 15, 1948. Having refused the trial court's proffer of judgment for such amount as an alternative to the granting of a new trial, the plaintiffs cannot now complain, nor, even later, if at a retrial the defendant proves to the jury's satisfaction that it was "impracticable" to strip-mine the tract which the lease required him to undertake first, and thereby obtains a verdict in his favor.

Order affirmed.