# Gaylord Builders, Inc., Appellant, *v.* Richmond Metal Mfg. Corp.

Argued March 17, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Joseph E. Gold,* with him *Arthur Silverman,* for appellant.

*Joseph Smukler,* with him *Nathan L. Posner,* and *Fox, Rothschild, O'Brien & Frankel,* for appellees.

OPINION BY HIRT, J., April 16, 1958:

The plaintiff as general contractor built a manufacturing plant for the defendant corporation in 1952. The contract price was $154,000 all of which was paid except $3,666.67, evidenced by four promissory notes signed by all of the defendants. This is an action in assumpsit brought by plaintiff on the notes. The defendants contested payment alleging that plaintiff did not complete work contemplated by the contract, in

failing: (a) to provide drainage of the surface water by means of 15-inch terra cotta pipe into a nearby creek; (b) to construct a cesspool for the disposal of industrial wastes, and (c) to construct an overhead door in an opening in the rear wall of the building, for the operation of a crane into and out of the building. The defendant corporation filed a counterclaim alleging that the cost of completing all of the above work would exceed the total amount of the notes. This defendant itself had installed the overhead door prior to the trial and produced evidence of an expense analysis showing $495.23 as its cost of completing this item of unfinished work. Inasmuch as it was admitted at oral argument before us that this item was not seriously contested we need not consider whether defendants' evidence of its cost met the test of reasonable market value of the work in question. The drainage pipe and cesspool had not been installed by the defendants up to the time of the argument of this appeal. The jury found that the cost of completing the unfinished work (including the cost of the overhead door) would amount to $4,700. And since this amount exceeded the total of the notes in suit, the jury brought in a verdict in favor of the defendant corporation and against the plaintiff for the difference, in the sum of $956.83. Judgment was entered on the verdict.

At the trial in January 1957 the defendant corporation was permitted to submit evidence of the cost of installing the terra cotta drain and the construction of the cesspool at prevailing market prices for labor and material *at the time of trial*. Plaintiff, alleging error in the refusal of a new trial contends that the breach of the contract, if any, occurred in 1952 and that defendants' damage cannot be measured by inflated costs under changed conditions over four years later. It was also contended that the alleged cost of install-

ing the overhead door was not properly proven. We are convinced that a new trial must be granted.

When a building contractor has neglected to perform his contract in every respect, it is the duty of the owner to mitigate the damages resulting from the unfinished work which the contractor failed to perform. *Taber v. Porter-Gildersleeve Co.*, 271 Pa. 245, 114 A. 773. The rule that one cannot recover damages from a defaulting party which could have been avoided by the exercise of reasonable effort is applicable to construction contracts. In *Henry Shenk Co. v. Erie Co. et al.*, 319 Pa. 100, 178 A. 662, at 109, it is said: " 'The rule [avoidable consequences not recoverable] may be applicable in any case of breach of contract. Where damages are claimed, not for the direct injury, that is, the loss of the value of the contract itself, but for a consequential loss, the plaintiff cannot recover for such loss if he might reasonably have avoided it'. Since the early New York case of Clark v. Marsiglia, 1 Denio 317, practically all American jurisdictions recognize and adopt this rule: Chamberlin v. Morgan, 68 Pa. 168; Hoffman v. Delaware, etc., R. R. Co., 39 Pa. Superior Ct. 47."

When plaintiff therefore, defaulted in the performance of its contract in the above respects it was the duty of the defendants to mitigate the damages as of the approximate time of the default by doing the work themselves or through others, *at labor and material costs then obtaining*. The defaulting contractor should be compelled only "to pay what it would reasonably cost [to do the work] *at the time of the breach*, less contract price . . ." *Taber v. Porter-Gildersleeve Co.*, supra. (Italics added). "As a general rule, the damages upon breach of contract are to be measured as of the date of the breach": 15 Am. Jur., Damages, §50. To the same effect is *Morse, Williams & Co. v. Arnfield*

*& Sons,* 15 Pa. Superior Ct. 140, 147, where the principle was applied to the facts in that case thus: "The question was not what would have made the elevator conform to the specifications *at the time of trial,* but what would have been required in the way of labor and materials to make it conform to the specifications on September 2, 1898 [the date of default fixed by the date of delivery], preserving the distinctive characteristics of the Morse, Williams & Company elevators." (Italics added).

The record in this case is meagre in a number of respects. The actual date of default does not appear. And from the testimony it is impossible to determine the conditions on the ground under which plaintiff was obligated to install the cesspool and the terra cotta pipe. It does appear definitely however that the cesspool was intended for the disposal of industrial wastes only, and the function of the pipe, running from the downspouts of the structure was to carry storm water from the roof of the building to a nearby creek. The defendants' expert witness testified in effect that changed conditions between 1952 and 1956 increased the costs of construction of both the cesspool and the pipe line. He testified: "When the work was started, it [the cost] could have been less because the ground was ruined. Q. What ruined the ground? A. It is more like a swamp. Q. What is that from? A. It comes from spreading upon the fields from this drainage. It is a very marshy situation, more like a swamp than anything else."

Defendants' witness, Marder, a plumber, testified from an inspection of the premises that the cost of running a 15-inch terra cotta pipe from the plant to the creek at the time of trial in January 1957 would be approximately $2,200. Plaintiff's witness, Stauffer, a sewer and drainage contractor, testified that in Au-

gust 1952 he was awarded a subcontract on his bid of $3,500 for work which included building the cesspool and also laying the drain pipe. Under his construction of the specifications (which however were not produced at the trial) he understood that he was to lay only 50 feet of 15-inch terra cotta pipe from a connection with the downspouts of the structure, to a nearby creek; the creek then was "about 60 feet from the back of the building." He laid 35 feet of the pipe but did not complete the remaining 15 feet for a reason that he was not permitted, over objection, to state. He figured $4 per foot for the 50 feet of 15-inch terra cotta pipe to be installed. At some later time (which also was not fixed by the evidence) the creek was diverted and its bed was moved (presumably by the defendants) to a distance of more than 200 feet from the building. Defendants' witness Marder testified that at January 1957 prices it would cost $2,200 to run "a 15-inch terra cotta pipe from the plant to the creek" a distance of about 210 feet under then existing conditions. Nowhere in the record before us does it appear whether the relocation of the creek was within the contemplation of the contracting parties, or if so, which party had the responsibility of relocation. On a retrial of this case the jury should have the specifications for inspection together with all other material evidence on the question of the extent of the obligation of the plaintiff under its contract in respect to installing the 15-inch terra cotta pipe as well as the construction of the cesspool.

Judgment reversed with a venire.