588 A.2d 462

**Thomas A. BAFILE and Wanda M. Bafile, his wife, Appellants,**

v.

**The BOROUGH OF MUNCY and Jane N. Jackson, Appellees.**

Supreme Court of Pennsylvania.

Argued May 10, 1990.

Decided March 13, 1991.

Reargument Denied May 13, 1991.

26

Scott Thayden Williams, Williamsport, for appellants.

John E. Person, III, Williamsport, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

ZAPPALA, Justice.

We granted appellants' Petition for Allowance of Appeal from the Order of the Superior Court, 387 Pa.Super. 645, 559 A.2d 959, affirming the Order of the Court of Common Pleas of Lycoming County which had granted the appellees' motion for summary judgment, to review the continuing

applicability of *Harris v. Dawson,* 479 Pa. 463, 388 A.2d 748 (1978). Because *Harris* no longer addresses economic reality and fails to take into consideration the principle of mitigation of damages, we can no longer adhere to its rationale.

The parties entered into an agreement for sale of real estate designated as 46 S. Main Street, Muncy, Lycoming County, a/k/a Normal School Building, on March 4, 1986. The purchase price was $90,000.00 with $1,000.00 hand money paid on account. Any default by the buyers was controlled by the following provision:

> DEFAULT BY BUYERS. Should BUYERS default in performing this agreement, any sum or sums paid on account shall be retained by SELLERS, either on account of the purchase money, the balance of which shall be recoverable in an action of assumpsit, or as liquidated damages, as SELLERS shall elect, and in the latter case this contract shall become null and void.

Record 66a. Because the Borough was unable to obtain adequate financing to complete the transaction, the Borough defaulted under the contract. The appellants then filed a complaint against the appellees seeking, in part, the purchase price.[1]

Subsequently, the appellants filed a motion in limine seeking court approval of another sale of the Normal School Building at a reduced sales price, in an attempt to mitigate the damages against the appellees. In addition, the appellants sought judicial approval of the sale so not as to prejudice their claim against the appellees. After taking testimony, the court granted the relief sought by the appellants finding the sales price of $50,000.00 both the "best and fairest price" and furthermore determining that this sales price "shall not prejudice the plaintiff's (sic) right to pursue its (sic) claims against the defendants." Record 26a.

---

1. In addition to the purchase price, the appellants sought other consequential damages such as additional interest expense, winterization expenses, operating expenses and lost rentals.

After the sales transaction for $50,000.00 was completed, the appellees amended their answer averring that the resale of the Normal School Building constituted an election by the appellants to accept the $1,000.00 down payment as liquidated damages. Thereafter, the appellees filed a motion for summary judgment on the basis of the subsequent sale of the property.

The trial court granted the appellees' motion for summary judgment holding that the court order of November 5, 1987 was effectively a non-jury adjudication of the value of the property on that date. Furthermore, since the appellants no longer had the ability to convey the property to the appellees, the appellants could not maintain their action for the purchase price, citing *Harris v. Dawson*, supra. Superior Court affirmed in a memorandum opinion adopting the trial court's rationale.

In *Harris v. Dawson*, supra, the parties entered into a purchase agreement for the sale of a tract of land in East Buffalo Township for $60,000.00. One Hundred Dollars was paid on account, $20,900.00 was due at the closing and the balance was to be satisfied by the transferring of the title of a home owned by the buyers. Thereafter, the buyers defaulted on the purchase. In response, the sellers sold the property to a third party for $54,000.00 and instituted a lawsuit for the difference between the contract price and the resale price.

On appeal, we held that the liquidated damage clause was clear and unambiguous and that in accordance with that provision, the seller could not recover the difference between the contract price and the resale price if the sellers were unable to tender a deed for the property upon satisfaction of a monetary judgment.

In most instances, buyers default because of a lack of funding. Therefore, it is unlikely that a buyer will be financially capable of complying with a decree of specific performance. During the time a seller must await the outcome of his lawsuit for specific performance, he is forced to maintain the property, possibly a mortgage, and is

subject to changes in the real estate market. The net result is that a successful seller may receive a paper victory only, as the buyer will be unable to comply with the decree of specific performance. What the successful seller is left with is a worthless victory, legal fees, consequential losses, possibly a loss of bargain, and the necessity to resell the property because of the buyer's inability to comply with the decree of specific performance.

Under *Harris,* a seller can avoid costly litigation and a loss of his bargain only by accepting the deposit as liquidated damages. This option, however, is most probably injurious to a seller, an innocent party, and will result in a windfall to a buyer. Furthermore, the *Harris* rule precludes any mitigation of damages.

Several months before the *Harris* decision, this Court disposed of an appeal similar to *Harris* in *Trachtenburg v. Sibarco Stations, Inc.,* 477 Pa. 517, 384 A.2d 1209 (1978). In *Trachtenburg,* the parties entered into sales agreements for the purchase of contiguous parcels of real estate in Homestead, Pennsylvania, for the purpose of constructing a service station. The agreement was contingent upon completing the purchase of all of the properties required to construct a service station, upon the property being free and clear of all leases, and upon receipt of the necessary permits for the construction. Prior to the closing date, the buyer informed the seller that it was cancelling the purchase agreement because of its inability to obtain the necessary permits. Each of the sellers then filed a complaint in equity requesting specific performance. Some of the sellers additionally sought various monetary damages. The buyer filed preliminary objections asserting that the complaint for specific performance should be dismissed because the sellers had an adequate remedy at law (i.e., money damages).

In reviewing the trial court's granting of a decree of specific performance, we listed and explained the three remedies available to a seller when a buyer defaults under an agreement of sale for real property. First, a seller can

sue a defaulting party for damages, measured as the contract price minus the fair market value at the time of the breach less any payments received. Second, a seller may request specific performance of the contract, if a seller can demonstrate that without this equitable remedy the seller will not be in the same position as if the buyer had not breached the contract. Finally, a seller may commence a contract action for the purchase price of the real property and other damages, conditioned upon the transfer of the property.

Concluding that the record did not support the trial court's finding that the sellers lacked an adequate remedy at law, we reversed and remanded for further proceedings. In discussing the sellers' options on remand we stated:

> The $1,000.00 in escrow is nothing more than part of the purchase price, and since equitable principles would be fully applicable to appellees' action, e.g. *Freeman v. Lawton*, [353 Pa. 613, 46 A.2d 205 (1946)], supra, it seems clear that the trial court cannot enter judgment in favor of appellees unless its order is conditioned upon appellees' transferring the deeds to the three parcels of real estate; appellees should not be permitted to recover the purchase price *and still retain ownership of the three contiguous parcels.* In summary, all the relief sought by appellees, including damages, are recoverable at law. (Emphasis added).

477 Pa. at 524, 384 A.2d 1213. We did not require the sellers to keep the property until their loss was satisfied. We indicated only that a seller cannot receive the purchase price from a buyer and retain ownership of the subject property.

As a general proposition of contract law, a party who suffers a loss due to a breach of contract has a duty to make a reasonable effort to mitigate his losses. *Taber v. Porter–Gildersleeve Co.*, 271 Pa. 245, 114 A. 773 (1921); *Ecksel v. Orleans Construction Const. Co.*, 360 Pa.Super. 119, 519 A.2d 1021 (1987); *State Public Sch. Bldg. v. W.M. Anderson Company*, 49 Pa.Commonwealth 420, 410 A.2d

1329 (1980); and *Gaylord Builders v. Richmond Metal Mfg. Corp.*, 186 Pa.Super. 101, 140 A.2d 358 (1958). *See also*, Restatement Contracts, Section 336(1) and Restatement, Second, Contracts, Section 350. This principle is consistent with the approach alluded to in *Trachtenburg*. To hold otherwise would in many instances penalize the breaching party beyond the assessment of actual damages while rewarding the injured party for his failure to act. Having concluded that *Trachtenburg* provides the better approach to the problem of what remedy is available to a seller upon a buyer's default, we must overrule *Harris v. Dawson.*

Reviewing the record before us, it is clear that the appellants did everything possible to mitigate their damages as well as protect their claim against the appellees. In fact, the trial court entered an order of court finding that the resale price was "fair and reasonable" and that appellants' actions in mitigating their damages did not prejudice their claim against the appellees. Even without the court order of November 5, 1987, the sellers' argument is consistent with the *Trachtenburg* rationale. The remedial provisions of the sales agreement provide for two options beyond default, applying the deposit towards the purchase price and pursuing the balance in a contract action, or keeping the deposit as liquidated damages. Under the latter option, the sellers would have determined that it was in their best interest to retain the property and be compensated only for the consequential damages suffered, measured by the contractual liquidated damages, while under the former option, the sellers would be able to proceed under general contract principles.

The analysis we employ today provides a common-sense approach to a recurring problem. Neither party will be punished. Instead, sellers will be made whole while buyers will pay the actual damages suffered by their repudiation of an enforceable sales agreement. Accordingly, the judg-

ment is reversed and the matter is remanded to the trial court for further disposition in accordance with this opinion.

Judgment reversed.