J-A07036-16; J-A07037-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ELIZABETH MILLING COMPANY, LLC, SMITHDON, L.P. A PENNSYLVANIA LIMITED PARTNERSHIP, AND MIKE ADAMS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| ROBERT N. ANDREWS AND SANDRA H. ANDREWS | |
| APPEAL OF: ROBERT N. ANDREWS | |
| | No. 599 WDA 2015 |

Appeal from the Order April 2, 2015
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-13-017997

| | |
|---|---|
| ELIZABETH MILLING COMPANY, LLC, SMITHDON, L.P. A PENNSYLVANIA LIMITED PARTNERSHIP, AND MIKE ADAMS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| ROBERT N. ANDREWS AND SANDRA H. ANDREWS | |
| Appellants | |
| | No. 622 WDA 2015 |

Appeal from the Order April 2, 2015
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-13-017997

J-A07036-16; J-A07037-16

| | | |
|---|---|---|
| ELIZABETH MILLING COMPANY, LLC, SMITHDON, L.P. A PENNSYLVANIA LIMITED PARTNERSHIP, AND MIKE ADAMS | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : | |
| ROBERT N. ANDREWS AND SANDRA H. ANDREWS | : : : | |
| | : : | No. 650 WDA 2015 651 WDA 2015 |

Appeal from the Order Entered April 2, 2015
In the Court of Common Pleas of Allegheny  County
Civil Division at No(s): GD 13-017997

BEFORE:  BOWES, J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED JULY 15, 2016**

Following a trial, a jury found Robert Andrews breached an asset purchase agreement and awarded Elizabeth Milling Company, LLC and Mike Adams (collectively, together with Smithdon, L.P., "Adams") $400,000.00. The jury also found Adams breached a land installment contract, which the parties had entered at the same time as the asset purchase agreement and which required Adams to pay monthly installments to Robert and Sandra Andrews.  The trial court ordered the land returned to the Andrews, that the $167,000.00 held in escrow be delivered to the Andrews, and that Adams pay an additional $252,983.36 for the sums due under the land installment contract.  The trial court did not award the Andrews counsel fees following

- 2 -

the breach of the land installment contract.[1]  After consideration of various

post-trial motions, the trial court granted Adams a new trial on damages.

Both parties filed notices of appeal.  We affirm the order granting a new trial

as to damages and denying the remaining post-trial motions.  We reverse

the order addressing the motion for payment of escrow account funds to

defendants and payment by plaintiffs of all outstanding sums due to

defendant pursuant to the land installment contract to the extent it denied

the request for reasonable attorney fees.  We affirm the order addressing

the motion for payment of all outstanding sums in all other respects.  We

will remand to the trial court for proceedings consistent with this opinion.

The trial court set forth the factual background as follows:

> This case grows out of an asset purchase agreement
> ("APA") entered into on September 19, 2011 between the
> Plaintiff, Elizabeth Milling Company, [LLC, (a limited
> liability company organized by Plaintiff[] Mike Adams,)]
> and the Defendant, Robert Andrews, the sole proprietor of
> a business operating as Elizabeth Milling Company.
> Elizabeth Milling Company ("EMC") packages and sells ice
> melt products in bags and buckets for use on sidewalks
> and driveways.  Pursuant to the agreement, Elizabeth
> Milling Company, LLC ("[EMC] LLC") purchased the assets
> of EMC including goodwill, equipment, and inventory.  The
> agreement was signed by Adams as sole member of EMC
> LLC and by Andrews as sole proprietor of EMC.  The
> Defendant, Sandra Andrews, did not sign the APA.
>
> The business of EMC was conducted on two pieces of real
> estate, one in Smithton, PA and one in Donora, PA.  The

---

[1] The jury also found Adams breached a contract to purchase inventory from Andrews and awarded $718,985.90 in damages for this breach.

Plaintiff, SmithDon, a limited partnership organized by Adams, and Defendants, Robert Andrews and Sandra Andrews[,] entered into a real estate installment land contract whereby SmithDon agreed to buy and the Andrews agreed to sell the Smithton and Donora premises for $1,340,000.00 payable over ten years at 6 percent interest resulting in payments of $14,000.00 per month.

Following the closing on the transaction on September 19, 2011, sales of EMC's products collapsed for both the 2011-2012 and 2012-2013 winter seasons. The parties contest the cause of this sales collapse. [Andrews] assert[s] that the local area experienced the warmest winter in 40 years and the fourth mildest winter on record in 2011-2012 thereby undermining the need for the purchase of salt product by the public. [Adams] assert[s] that EMC's primary customer ceased making purchases from EMC because of the availability of similar product at more competitive pricing and superior servicing levels from a local competitor. [Adams] asserts that [Andrews] failed to disclose the existence of this competitor and/or its competitive advantages before the closing on the sale.[2]

Opinion, 7/24/2015, at 2-3 (hereinafter "1925(a) Opinion").

Adams filed a complaint against Robert and Sandra Andrews, which was later amended. The amended complaint alleged a breach of contract claim, a fraudulent inducement claim, a rescission claim, a negligent misrepresentation claim, and a tortious interference claim. Amended Complaint at ¶¶ 30-92. Robert and Sandra Andrews filed counterclaims. Robert Andrews filed a counterclaim for breach of the APA and a conversion counterclaim for failure to pay the balance due for the purchase of inventory, and Sandra and Robert Andrews filed a breach of the land installment

_____

[2] Adams also alleged Andrews submitted false information on tax returns.

contract counterclaim.[3]  Answer to Amended Complaint and New Matter at ¶¶ 101-142.

Prior to trial, the trial court granted summary judgment in favor of Sandra Andrews and dismissed the amended complaint with prejudice as to her alone.  Order, 1/13/2015.  In addition, the trial court granted Robert Andrews' motion for summary judgment as to the negligent misrepresentation claim and the tortious interference claim.  Order, 1/14/2015.  It deferred a ruling as to the rescission claim.  *Id.*  The trial court denied summary judgment as to the breach of contract and fraudulent inducement claims.  *Id.*

Following a trial, the jury found Andrews breached the full disclosure provision of Section 4.10 of the APA;[4] found Adams suffered damages in the

_____

[3]  Sandra and Robert Andrews also filed actions in ejectment, in Westmoreland and Washington Counties, to recover possession of the real estate.  Adams filed motions to stay the actions in ejectment.  The actions were stayed, with a condition that Adams pay into an escrow account the monthly amount due.

[4] Section 4.10 of the APA provides:

> **Full Disclosure**:   Neither this Agreement, nor any schedule, exhibit, list, certificate or other instrument or document delivered to Buyer pursuant to this Agreement by or on behalf of Seller, contains any untrue statement of a material fact or omits to state any material fact required to be stated herein or therein or necessary to make the statement, representations, or warranties and information contained herein or therein not misleading.  Seller has not withheld from Buyer disclosure of any event, condition, or fact which Seller knows, or has reasonable ground to

*(Footnote Continued Next Page)*

amount of $400,000.00 as a result of the breach; and found Andrews did not intentionally or with reckless indifference make untrue statements of material fact or omit disclosure of a material fact in order to fraudulently induce Adams to purchase the business. The jury further found Adams breached the land installment contract and breached the contract to purchase inventory. The jury awarded Andrews $718,985.90 for the breach of the contract to purchase inventory. As agreed to by the parties, the trial court issued orders as to the damages resulting from the breach of the land installment contract. The court ordered the land be returned to Robert and Sandra Andrews, that money being held in escrow be paid to the Andrews, and that the additional payments due under the contract be paid to the Andrews. Order, 3/10/2015; Order, 4/2/2015.

Adams raises the following issues on appeal:

> A. Whether the court is empowered to mold the verdict to add damages for breach of contract to make the record accord with the uncontroverted facts and the verdict speak the truth[?]
>
> B. Whether [Adams is] entitled to a new trial based upon an erroneous verdict slip and special jury interrogatories[?]
>
> C. Whether [Adams is] entitled to a new trial on damages on grounds that the trial court erred in charging the jury on mitigation[?]

_(Footnote Continued)_ ─────────────────────

know, may materially adversely affect the Purchased Assets or the operations of the business.

Plaintiff's Amended Complaint, at Exh. A., Asset Purchase Agreement at 5.

D. Whether the trial court erred in granting summary judgment in favor of defendant Sandra Andrews and dismissing her as a defendant with respect to [Adams'] claims[?]

E. Whether the trial court erred in ordering return of escrow payments and sums due under the land installment [contract] and/or refusing [Adams'] cross motion or maintaining the status quo ante pending appeal[?]

Adams' Appellant Brief at 4 (unnecessary capitalization omitted).

Andrews raises the following issues on appeal:

1. Where liability and damages were hotly contested, the court made no error of law, fact or discretion at trial and there is clear evidence that the jury verdict was a compromise which the trial judge failed to analyze, did the judge commit an error of law by granting a new trial as to damages?

2. Where there are rational explanations for the jury's calculation of the damages awarded to [Adams], did the trial judge commit an error of law by granting a new trial as to damages without considering those rational explanations?

3. Where the contract provided for an award of attorney fees to the party prevailing in effort to enforce the contract, did the judge commit an error of law in refusing to award attorney fees to [the Andrews] who prevailed on their breach of contract counterclaim.

Andrews' Appellant Brief at 3.

## A. Damages

The parties first dispute whether the trial court erred when it ordered a new trial on the issue of damages and whether the trial court erred in refusing to mold the verdict.

Damages in a breach of contract action should place the aggrieved party "as nearly as possible in the same position [it] would have occupied

- 7 -

had there been no breach." ***Ely v. Susquehanna Aquacultures, Inc.***, 130 A.3d 6, 10 (Pa.Super.2015) (quoting ***Helpin v. Trustees of Univ. of Pennsylvania***, 10 A.3d 267, 270 (Pa.2010)). An aggrieved party may recover all damages, provided "(1) they were such as would naturally and ordinarily result from the breach, or (2) they were reasonably foreseeable and within the contemplation of the parties at the time they made the contract, and (3) they can be proved with reasonable certainty." ***Id.*** (quoting ***Helpin***, 10 A.3d at 270). Further, "a party who suffers a loss due to the breach of a contract has the duty to make reasonable efforts to mitigate his losses." ***Portside Investors, L.P. v. N. Ins. Co. of N.Y.***, 41 A.3d 1, 15 (Pa.Super.2011) (quoting ***Bafile v. Borough of Muncy***, 588 A.2d 462 (Pa.1991)). "The burden to prove this duty to mitigate is placed on the party who actually breaches the contract; the breaching party must show how further loss could have been avoided through the reasonable efforts of the injured party." ***Id.*** (quoting ***Pontiere v. James Dinert, Inc.***, 426 Pa.Super. 576, 627 A.2d 1204 (1993)).

The trial court provided the following reasoning for granting a new trial as to damages:

> Following trial, the parties filed post-trial motions. [Adams'] principal argument in post[-]trial motions was that the jury's determination that Adams suffered only $400,000.00 in damages as a result of Andrews' breach of the APA bore no reasonable relationship to the actual damages suffered, and was not supported by the evidence presented at trial. [Adams] assert[s] that the jury was presented with undisputed evidence that [Adams] purchased EMC on September 19, 2011 upon payment of

$400,000.00 "cash" hand money and $2,300,000.00 in proceeds from the loan from Dollar Bank and promissory note signed by Adams in the amount $200,000.00. Additionally, [Adams] incurred additional debt by way of $1,000,000.00 line of credit and a $100,000.00 bridge loan in order consummate the transaction. All of the debt and loans described above were guaranteed and collateralized by property owned by Adams. Adams presented testimony which did not appear to be materially rebutted by Andrews that nearly all of the above cash and debt was expended in an effort to maintain the business. As such, [Adams] contends that these monies are proper damages as they were lost as a result of Andrews' breach of the APA.

Specifically, Adams asserted that his actual losses included the $400,000.00 hand money paid at closing, the balance due on the term loan from Dollar Bank in the amount of $2,069,008.00, the line of credit balance in the amount of $980,000.00, and the bridge loan in the amount of $100,000.00 for a total of $3,540,008.00. These sums were asserted as items of direct and consequential loss suffered by [Adams]. Additionally, Adams testified that he failed to receive his scheduled $180,000.00 per year salary from September, 2011 through January, 2015 (Adams did receive $98,357.00 in salary during that time frame, resulting in a deficiency of $506,643.00). While perhaps not directly relevant to his asserted damages, Adams presented evidence that he was compelled to withdraw from his retirement account in the amount of $317,336.00 and that when he left his law practice he earned approximately $220,000.00 per year. Adding Adams's business financing losses to his lost salary revenue, results in a total direct and consequential damages claim in the amount of $4,046,651.00.

The testimony and evidence presented at trial as to these issues was materially unchallenged except to the extent that Andrews proposed that some of Adams's losses were not a function of Andrews's breach of the contract, but rather Adams's mismanagement of EMC after Adams purchased it, and/or as a natural consequence of dramatically warmer winters and its impact upon customers' demand of EMC's ice melt products. Andrews's arguments in this respect are not lost on the [c]ourt. It is

for this reason that the [c]ourt did not grant [Adams's] Motion to Mold the Verdict to reflect damages in the amount of $4,046,651.00. While Adams has established a *prima facie* case for breach of contract damages in that amount, Andrews is entitled to a set-off for any diminution in value of the business as a result of the then-unanticipated unseasonably warm winters of 2011-2012 and 2012-2013 (if any) and/or consequences of Adams's mismanagement of the business (if any) that the jury concludes affected the value of EMC.

Frankly, I cannot do more than guess as to how the jury might calculate, or otherwise arrive at, a quantification of diminution in the value of the EMC business with respect to these issues. Given the evidence presented at trial many different calculations could be made resulting in a great many possible final damages awards. In order to sustain the jury's verdict in this case, however, I would have to conclude that the jury properly found that Adams's claimed losses of $4,046,651.00 should be reduced by exactly $3,646,651.00 – in order to arrive at the $400,000.00 verdict award that jury did. It is entirely conceivable that the jury might have selected that number, $3,646,651.00, as a set-off diminution in the value of the business caused by natural seasonal fluctuation in sales or Adams' mismanagement (if any), just as it might have selected any one of many other numbers from $0.00 to $4,046,651.00 as an appropriate set-off. But what is remarkable, and in my judgment coincidental to the point of unacceptable improbability, is that when one subtracts $3,646,651.00 from Adams's claimed $4,046,651.00 in damages, to arrive at a damages value of $400,000.00 one also, coincidentally, arrives at the precise amount of money that Adams provided as hand money at the time of closing. This personal "cash" contribution at the time of closing, standing alone, bears absolutely no reasonable relationship to Adams's actual damages in this case. The jury could not have properly arrived at the conclusion that Adams's hand money at closing was the appropriate measure of damages yet it appears that is exactly what the jury did, and this [c]ourt cannot countenance such a suggestion. In order to sustain the jury's verdict, the [c]ourt would have to conclude that the jury determine that the actual value of the EMC business was properly

- 10 -

reduced because of either unseasonably warm weather and/or by Adams' mismanagement by exactly $3,646,651.00, thereby resulting in a damage award of $400,000 - an amount that is, purely coincidentally, the identical amount of Adams' hand money at closing.

While it is not the prerogative of this [c]ourt to second-guess the judgment of a jury, where it is evident to the [c]ourt that the jury mistook its responsibility or misapplied the law, it is the obligation of this [c]ourt to attempt to rectify that error. It is plain to this [c]ourt that the jury, while undoubtedly doing its very best to arrive at an appropriate damages calculation in a fairly complicated business transaction, somehow determined that Adams was entitled only to his $400,000.00 hand money payment at closing as a result of Andrews' breach of contract.

Accordingly, the only reasonable interpretation of the jury's $400,000.00 award is that the jury misapplied the law with respect to contract damages and awarded Adams only the hand money he delivered to Andrews at closing and ignored the other items recoverable by Adams as a result of Andrews' breach of the APA.

[Andrews] argues that compromise verdicts are a reality of litigation and are not only tolerated, but, at times, condoned by the [c]ourts. There is, however, in this case, no actual evidence or reason to believe that the jury's verdict constituted a "compromise" verdict of any kind. We have no insight at all into the thinking of the jury. To the extent we can make any guess, we can look only to the available evidence presented at trial and observe that the jury's verdict, coincidentally, happens to be identical to the amount of hand money paid by Adams at the time of closing. Moreover, while "compromise verdicts" are tolerated by the [c]ourt, they are more appropriately tolerated only in personal injury claims where damage valuations are necessarily less objectively quantifiable. In a breach of contract case, it is the obligation of the fact finder to make a reasoned assessment of the evidence supporting quantifiable damages presented at trial. It is evident to the undersigned that such did not occur in this case. As a result, the verdict shocks the court's conscience, and a new trial as to damages is warranted.

1925(a) Opinion at 5-9.

We first address Andrews' claim that the trial court erred in awarding a new trial for damages. This Court has stated the following regarding our standard of review of an order granting a new trial:

> Trial courts have broad discretion to grant or deny a new trial. The grant of a new trial is an effective instrumentality for seeking and achieving justice in those instances where the original trial, because of taint, unfairness or error, produces something other than a just and fair result, which, after all, is the primary goal of all legal proceedings. Although all new trial orders are subject to appellate review, it is well-established law that, absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial.

*Harmon v. Borah*, 756 A.2d 1116, 1121-22 (Pa.Super.2000) (internal citations and quotation marks omitted).

Andrews argues that the jury was permitted to reach a compromise verdict in this case. Andrew's Appellant Brief at 22-23.

"Compromise verdicts are verdicts where the fact-finder is in doubt as to the defendant's liability vis-à-vis the plaintiff's actions in a given suit but, nevertheless, returns a verdict for the plaintiff in a lesser amount than it would have if it was free from doubt." *Morin v. Brassington*, 871 A.2d 844, 852-53 (Pa.Super.2005).

Compromise verdicts are most common in personal injury verdicts. *See Morin*, 871 A.2d at 853. Andrews, however, argues compromise verdicts are also permissible in contract cases. He relies on *Morin*, which

applied the compromise verdict law to a contract case. In **Morin**, the parties entered into a contract in which the plaintiff would work for the defendant at the defendant's sporting goods store. 871 A.2d at 847. In return for managing the store, the defendant would pay the plaintiff when the defendant retired from his other job. **Id.** The plaintiff alleged the defendant breached the contract because he failed to pay him. **Id.** The trial court found the defendant breached the contract, but did not award all damages sought. **Id.** at 847-48. The plaintiff alleged he worked 40 hours a week for 52 weeks a year, for 11 years, with no time off. **Id.** at 852. The trial court awarded damages for 30 hours per week, for 48 weeks per year. **Id.** This Court affirmed the verdict, stating:

> The trial court was able to ascertain the fact of damages from the evidence presented in this case but not the exact amount of damages. It was certain from the evidence presented at trial that Morin used a substantial portion of his time working at Brassington's store throughout the 11[-]year period. However, given the nature of their work relationship, Morin's work hours were not supervised or recorded in a typical fashion, and, consequently, they were not susceptible of being proven with any degree of exactitude. Therefore, drawing reasonable inferences from the evidence presented, the trial court arrived at an intelligent estimate of the damages suffered by Morin as a result of Brassington's breach of the oral contract. This action was proper, inasmuch as the trial court could not fully credit the testimony of Morin, who claimed that he worked continuously for Brassington for 11 years without time off. **See, e.g., J.W.S. Delavau, Inc.** [**v. Eastern Am. Trans. & Warehousing, Inc.**]**,** 810 A.2d [672,] 685-86 [Pa.Super.2002]; **see also** [**Frank Burns, Inc. v.**] **Interdigital Comm. Corp.,** 704 A.2d [678,] 682 [Pa.Super.1997]; **see generally Spang & Co. v. U.S. Steel Corp.,** []545 A.2d 861 ([Pa.]1988) (discussing

broad discretion of trial court to fashion fair estimate of damages in contract cases where specific amount of damages cannot be determined accurately). Thus, we are satisfied that the trial court did not abuse its discretion.

*Morin*, 871 A.2d at 853 (emphasis deleted).

Andrews also relies on *Campana v. Alpha Broad. Co.*, 361 A.2d 708 (Pa.Super.1976) and *O'Neill v. Atlas Auto Fin. Corp.*, 11 A.2d 782, 783 (Pa.Super.1940). *Campana* upheld a compromise verdict where the appellant breached an employment contract and the jury awarded the appellee half the amount he requested. 361 A.2d at 710. The court ruled that the verdict was not unreasonably low and also noted that the appellant, not the appellee, challenged the amount. *Id.* The court also noted that whether appellee could have earned more money, i.e., done more to mitigate his damages, was in dispute. *Id.* Similarly, *O'Neill* involved a contract for professional services where this Court found the jury properly reached a compromise verdict, reasoning:

> An examination of the record discloses a number of conflicts in the evidence bearing upon these issues, but it also discloses that plaintiffs adduced sufficient competent evidence to take each issue to the jury. They were submitted in a manner concerning which no complaint is made in the assignments. The verdict was evidently a compromise over the inclusion or rejection of certain items claimed by plaintiffs and the reasonableness of some of their charges, but the matters at issue were exclusively for determination by the jury. We find no error upon this record which would justify the granting of a new trial with respect to these items.

*O'Neill*, 11 A.2d at 783.

This Court recently issued a decision in **Ely v. Susquehanna Aquacultures, Inc.**, 130 A.3d 6 (Pa.Super.2015). In **Ely**, the plaintiff signed a two-year employment contract with the defendant to serve as the defendant's vice president. **Id.** at 9. The defendant terminated the plaintiff mid-contract, and paid no further wages or benefits. **Id.** The jury found the defendant breached the employment contract and found the plaintiff mitigated his damages, but awarded less than the amount of wages minus the mitigation. **Id.** at 10. This Court upheld the compromise verdict, reasoning:

> [The plaintiff] argues that [the defendants] did not offer evidence to contradict his $79,539.83 in alleged damages. Therefore, according to [the plaintiff], the jury was required to award that amount upon finding [the defendant] in breach of the employment contract. [The plaintiff] argues the lesser amount does not put him in the position he would have been in absent the breach, in accordance with **Helpin**. Given the state of the record, however, we cannot conclude the jury's compromise verdict constitutes an injustice that "stands forth like a beacon." **Frank Burns, Inc.,** 704 A.2d at 682. Isolano described several significant and costly mistakes that occurred at [the defendant] under [the plaintiff's] management. Possibly, the jury issued a compromise verdict based on its belief that [the plaintiff's] mistakes did not warrant termination but did warrant a lesser damages award in his favor. Compromise verdicts, as we noted above, are favored in the law. We discern no basis for disturbing the jury's verdict in this case.

**Id.** at 13.

Unlike **Ely** and the cases relied on by Andrews, which involved services performed or employment contracts, here the contract in dispute was for the

purchase of a business. In the cases relied on, there was a dispute about the services performed, or the hours worked. Here, the jury found Appellee breached the APA by breaching the full disclosure provision. This caused Adams to purchase a business he would not have purchased, or to purchase a business for more money than he would have paid if the breach had not occurred.

Further, unlike the cases relied on by Andrews, here there is no quantifiable explanation for the jury's verdict. The jury properly could have concluded that Adams would have purchased the company, for a lesser price, even if he had known the information Andrews failed to disclose. The jury could have determined that any damages amount should have been reduced based on evidence of the unseasonably warm winters or Adams' alleged mismanagement. In addition, the jury was not required to award all alleged consequential damages. The "compromise" reached by the jury, however, was not based on any damages evidence presented. Rather, as the trial court explained, it is "coincidential to the point of unacceptable improbability" that the jury used the evidence presented to determine that Adams would have suffered $400,000.00 in damages, which also equals the amount Adams paid in cash at the time of closing. It is not possible to reconcile the damages evidence presented with the jury's $400,000.00 damages award. Applying the abuse of discretion standard applied to orders granting a new trial, we find the trial court acted within its discretion and did not err in granting a new trial as to damages.

Adams argues that, rather than granting a new trial as to damages, the trial court should have molded the verdict and awarded the $4,046,651.00 in damages sought by him.

A trial judge has the power to mold a verdict. ***Krock v. Chroust***, 478 A.2d 1376, 1380 (Pa.Super.1984) (citing ***Fish v. Gosnell***, 463 A.2d 1042 (Pa.Super.1983)). The power, however, is limited:

> [T]he verdict to be molded must manifest a clear intent on the part of the jury. Where the intention of the jury is far from obvious, the verdict should be returned to the jury for further deliberations or a new trial should be granted. ***House of Pasta, Inc. v. Mayo***, []449 A.2d 697, 701 ([Pa.Super.]1982). "The power to mold or more precisely amend a jury's verdict is merely a power to 'make the record accord with the facts, or to cause the verdict to speak the truth.'" ***Id.*** quoting Standard Pennsylvania Practice (Rev.Ed.) Ch. 27, § 72. If the trial judge must assume facts which cannot be discerned from the verdict, then the verdict should not be molded. ***May v. Pittsburgh Railways Co.***, [] 224 A.2d 770, 772 ([Pa.Super.]1966).

***Id.***

Here, Adams presented evidence to support a damage calculation that would place him in the position he occupied before entering the contract. However, the jury could have determined that Adams would have entered the contract, but paid less for the business, or could have reduced the damages award based on the unseasonably warm weather or the alleged mismanagement. Further, the jury was not required to believe that Adams suffered all the consequential damages he claimed resulted from the breach.

The trial court, therefore, did not have sufficient facts to determine what the jury decided, and did not abuse its discretion in refusing to mold the verdict.

### B. Verdict Slip and Interrogatories

Adams alleges the trial court should have awarded a new trial because the verdict slip and jury special interrogatories were erroneous. Adams' Appellant Brief at 30-32.

The parties disagreed about whether the rescission jury instruction should only include rescission for fraud, or whether rescission was also proper if the jury found a breach of contract occurred. The trial court issued the following instruction as to rescission, which provided that rescission was proper if the jury found fraud or found the party was mistaken as to a material fact that induced him to enter the contract:

> [R]escission of a contract means that one party has a right to undo a contract and to seek to put the parties in the position they occupied before the contract was created. A party is permitted to rescind a contract if the party seeking rescission was mistaken as to an essential fact that induced that party to contract and the other party knew or had reason to know that the first party was so mistaken; or the party seeking rescission was induced to enter the contract by the fraud of the other party, provided the fraud was to a material part of the contract; or the party seeking rescission relied on a material misrepresentation by the other party, even if the misrepresentating party was ignorant as to the truth or falsity of the representation.

N.T., 1/26/2015, at 1140. The verdict slip submitted to the jury, however, only asked whether the contract should be rescinded if the jury found a

fraudulent inducement occurred.[5]  If the jury did not find Andrews fraudulently induced Adams to enter the contract, then the verdict slip instructed the jury to skip the rescission question.  Neither party objected to the structure of the verdict slip.[6]  Because he failed to object to the verdict slip submitted to the jury, Adams waived his challenge to the verdict slip.  *See* Pa.R.C.P. 227.1(b)(1) and (2) (issues are waived for purposes of post-trial relief unless the issue was specifically raised during pre-trial or trial proceedings).

### C. Mitigation Jury Instructions

Adams next claims the trial court erred when it issued the mitigation of damages jury instruction.  Adams' Appellant Brief at 32-33.

This Court applies the following standards to review jury instructions:

> In examining jury instructions, our scope of review is limited to determining whether the trial court committed a clear abuse of discretion or error of law controlling the outcome of the case. Error in a charge is sufficient ground for a new trial if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than

---

[5] Following the verdict slip question related to fraudulent inducement, No. 3, the verdict slip stated, "If you answered Question 3 'yes,' go to Question 4; otherwise go to question 7."  The question regarding rescission was question 5.

[6] During deliberations, the jury asked the following questions:  "If we vote breach of contract, what happens next to the contract?"  and "Does it make it null and void?"   Following discussion with counsel, the trial court responded:  "You should follow the [c]ourt's instructions and read and follow the instructions on the verdict slip."  N.T., 1/26/2015, at 1166-68.

clarify a material issue. Error will be found where the jury was probably [misled] by what the trial judge charged or where there was an omission in the charge. A charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to a fundamental error. In reviewing a trial court's charge to the jury[,] we must look to the charge in its entirety. Because this is a question of law, this Court's review is plenary.

*Passerello v. Grumbine*, 87 A.3d 285, 296-97 (Pa.2014) (quoting *Quinby v. Plumsteadville Family Practice, Inc.*, 907 A.2d 1061, 1069–70 (Pa.2006)).

During the jury instructions, the trial court read the following jury instruction regarding mitigation:

In this case, [Adams] had the sole opportunity to guide and manage Elizabeth Milling Company at all times subsequent to September 19, 2011. If you find that []Andrews breached the agreement for asset purchase but that the value of the company has declined due solely to mismanagement on the part of [] Adams, you may reduce [Adams'] damages accordingly.

N.T., 1/26/2015, at 1142-43. During the charging conference, the trial court stated that it was not its practice to include argument in its jury instructions. The court, however, included the first line of the instruction, i.e., "[i]n this case, the plaintiff, []Adams, had the sole opportunity to guide and manage Elizabeth Milling Company at all times subsequent to September 19, 2011," which Adams claims was argument. In its 1925(a) opinion, the trial court noted that it was not its usual practice to include the language contained in the first line, and it believed it inadvertently did so

here. 1925(a) Opinion, at 11. The trial court, however, noted that the sentence, even if argumentative, was "in all material respects factually unrebutted by [Adams]." *Id.* The trial court found no prejudice or harm occurred by stating the sentence to the jury. This was not an abuse of discretion.

### D. Grant of Summary Judgment for Sandra Andrews

Adams next argues the trial court erred when it granted Sandra Andrews' motion for summary judgment. Adams' Appellant Brief at 33-35.

When reviewing an order granting or denying summary judgment, this Court "may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion." *Murphy v. Duquense Univ. of the Holy Ghost*, 777 A.2d 418, 429 (Pa.2001) (quoting *Capek v. Devito*, 767 A.2d 1047, 1048, n. 1 (Pa.2001)). Further,

> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. "Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof . . . establishes the entitlement of the moving party to judgment as a matter of law." *Young v. PennDOT*, [] 744 A.2d 1276, 1277 ([Pa.]2000). Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

> ***Pennsylvania State University v. County of Centre***, []
> 615 A.2d 303, 304 ([Pa.]1992).

***Murphy***, 777 A.2d at 429.

Adams argues that Sandra and Robert Andrews were partners by operation of law based on their marriage and that Sandra is not insulated from liability because the business was a sole proprietorship. Adams' Appellant Brief at 34. Adams notes that Sandra was required to sign the Land Installment Contract, the Memorandum, and a marital waiver related to two documents. ***Id.***

The trial court stated:

> [Adams] argue[s] that because EMC was a sole proprietorship as opposed to a corporation, Sandra Andrews's mere spousal legal interest, an undivided 50 percent ownership interest in the company, somehow supports a cause of action against Ms. Andrews. [Adams], himself, points out in his post-trial brief that Sandra Andrews signed only four documents, the land installment contract, the memorandum, and two marital waivers related to the bill of sale for inventory and the bill of sale and assignment. There has been no argument advanced that Ms. Andrews breached any terms or conditions of any of these documents and there is no evidence that Ms. Andrews made any other affirmative claims or representations upon which any theory of breach of contract or misrepresentation could be advanced. For these reasons, the grant of summary judgment in favor of Ms. Andrews was appropriate.

1925(a) Opinion at 11-12.

There is no evidence Ms. Andrews participated in the alleged failure to disclose, made any misrepresentation, or committed any other breach of

contract. The trial court did not err in granting Sandra Andrews's summary judgment motion.

**E. Return of Escrow Payments and Sums Due Under the Land Installment Contract**

Adams claims that, because the jury found Andrews breached the APA, Adams was entitled to all consequential losses as a result of that breach, including money spent on the land installment contract. Adams' Appellant Brief, at 36. He maintains the APA and the land installment contract were not separable. *Id.*

The trial court found:

> [Adams] assert[s] that the [c]ourt erred in granting release of escrow funds and that the trial court erred in ordering payments of sums due under the land installment contract, which [Adams] now assert[s] is void, *ab initio*, given the jury's finding of [Andrews'] breach. [Adams'] agreement with [Andrews] pursuant to the land installment contract was an independent contractual obligation outside the scope of the APA. [Adams] did not present evidence materially challenging the [Andrew's] position that [Adams] was in breach of the land installment contract, as [Adams] could not do so. [Adams] did not make payments due under the land installment contract, and was thereby in breach of the contract. Execution on the property subject to the land installment contract was stalled only as a result of the [c]ourt ordered stay entered in light of the pendency of the contract claims between the parties related to the APA. The jury's findings with respect to the APA might, possibly, have impacted the appropriate resolution of the land installment contract claims then pending. For instance, moneys owed under the land installment contract, may very well have been properly awarded by the jury as consequential damages associated with [Andrews'] breach of the APA.

> At the close of the trial, however, there can be no question that the jury found that [Adams] was in breach of the land installment contract and that the amounts due under the contract exceeded the available escrow funds. There is no legal basis to deny [Andrews] payments of the escrow moneys that are available in partial satisfaction of the jury verdict award in his favor with respect to the land installment contract. As noted in this Court's Order, if Plaintiff succeeds in obtaining a subsequent damages trial, Plaintiff may very well assert these obligations as consequential damages flowing from Defendant's breach of the APA, but the instant finding of liability under the land installment contract, and the release of the available escrow funds is entirely warranted.

1925(a) Opinion at 12-13.

The land installment contract is a separate contract, which does not mention the asset purchase agreement. Further, the land installment contract states that "[t]his Contract contains the entire agreement and understanding among the parties with respect to the sale of the Real Estate and supersedes any and all prior oral or written agreements among the parties." Amended Complaint at Exh. B, at 10. The trial court did not err in awarding Andrews the escrow payments and additional payments due under the land installment contract.

### F. Attorney Fees

Robert and Sandra Andrews argue the trial court erred when it did not award counsel fees related to Adams' breach of the land installment contract. Andrews' Appellant Brief at 54-56.

Section 14(a) of the land installment contract provides: "Each party is entitled to recover its reasonable attorney fees, costs, and expenses incurred by reason of enforcing any right hereunder, including the expenses of preparing any notice of delinquency, whether or not any legal action is instituted." Amended Compliant, at Exh. B, Land Installment Contract at 9.

Andrews maintains the trial court did not have the discretion to refuse the award of attorney fees. Andrews' Appellant's Brief at 54-56. The trial court did not address this issue in its 1925(a) opinion. The attorney fees provision of the land installment contract states a party "is entitled," to its reasonable attorney fees and is not discretionary. *See McMullen v. Kutz*, 985 A.2d 769, 775 (Pa.2009) (finding each party responsible for their own attorney fees unless "unless there is express statutory authorization, a clear agreement of the parties or some other established exception" and finding language stating a breaching party "shall" be responsible for the payment of fees expressed a clear agreement of the parties). Because Adams breached the agreement, the trial court erred in failing to award Andrews his reasonable attorney fees associated with enforcing the land installment contract.

Order granting a new trial as to damages and denying all other post-trial motions affirmed. Order addressing the motion for payment of escrow account funds to defendants and payment by plaintiffs of all outstanding sums due to defendant pursuant to the land installment contract reversed to the extent it denied the request for reasonable attorney fee. The order addressing the motion for payment of all outstanding sums due affirmed in all other respects. Case remanded. Jurisdiction relinquished.

Judge Mundy joins the memorandum.

Judge Bowes files a concurring/dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/15/2016